# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* [FILED UNDER SEAL], | |
| Plaintiffs, | |
| vs. | Civil Case No. 1:12-cv-01423 |
| [FILED UNDER SEAL], | |
| Defendant. | |

## AMENDED COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATIONS OF THE FALSE CLAIMS ACT

## DEMAND FOR JURY TRIAL

## [FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)]

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* **CHRIS RIEDEL**, an individual, <br><br> 2605 South Winchester Boulevard <br> Campbell, CA 95008 <br><br> Plaintiffs, <br><br> vs. <br><br> **BOSTON HEART DIAGNOSTICS CORPORATION**, a Delaware corporation; <br><br> 175 Crossing Blvd. Suite 550 <br> Framingham, MA 01701-4163 <br><br> Defendant. | Civil Case No. 1:12-cv-01423 |

## AMENDED COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATIONS OF THE FALSE CLAIMS ACT

### DEMAND FOR JURY TRIAL

### [FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)]

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................1

II.   JURISDICTION AND VENUE ........................................................................3

III.  PARTIES............................................................................................................4

IV.  OVERVIEW OF THE SCHEME ....................................................................4

V.    DEFENDANT VIOLATED THE FALSE CLAIMS ACT BY PROVIDING
KICKBACKS IN EXCHANGE FOR THE REFERRAL OF "PULL-
THROUGH" MEDICARE AND MEDI-CAL BUSINESS ..............................9

VI.  DEFENDANT VIOLATED THE FALSE CLAIMS ACT BY USING CODE
STACKING TO INFLATE THE AMOUNT BILLED TO MEDICARE FOR
PANEL TESTS .................................................................................................13

VII. CAUSES OF ACTION.....................................................................................14

       FIRST CAUSE OF ACTION
       ON BEHALF OF THE UNITED STATES FEDERAL FALSE CLAIMS ACT,
       PRESENTING FALSE CLAIMS 31 U.S.C. § 3729(A)(1)(A)..........................14

       SECOND CAUSE OF ACTION
       ON BEHALF OF THE UNITED STATES FEDERAL FALSE CLAIMS ACT,
       MAKING OR USING FALSE RECORDS OR STATEMENTS MATERIAL TO
       PAYMENT OR APPROVAL OF FALSE CLAIMS 31 U.S.C. § 3729(A)(1)(B) ..........15

       THIRD CAUSE OF ACTION
       (IN THE ALTERNATIVE)
       ON BEHALF OF THE UNITED STATES FEDERAL FALSE CLAIMS ACT,
       RETENTION OF PROCEEDS TO WHICH NOT ENTITLED 31 U.S.C. §
       3729(A)(1)(G) ..................................................................................................16

VIII. PRAYER FOR RELIEF ..................................................................................17

DEMAND FOR JURY TRIAL ...................................................................................20

Plaintiffs UNITED STATES OF AMERICA ("United States"), by and through Relator

CHRIS RIEDEL, alleges as follows:

# I.   **INTRODUCTION**

1.     Over the past several years, Defendant BOSTON HEART DIAGNOSTICS

CORPORATION ("Boston Heart") has perpetrated a multi-million dollar fraud on U.S.

taxpayers through a Medicare kickback scheme.  Defendant has provided illegal kickbacks in

several forms to doctors and clinics in order to induce those doctors and clinics to refer Medicare

business to them.  The kickbacks take the following forms, as described in detail in this

Complaint:

     a.     Defendant promises to doctors that it will waive co-payments or patient

deductible payments from the doctors' privately-insured patients.  This is

of great benefit to the doctors, who are able to attract and retain the

business of patients by promising no co-payments or patient deductible

payments.  In exchange for this benefit, the doctors send all of their lipid-

related business, including Medicare business, to Defendant.  As such, the

waiver of deductibles and co-payments constitutes illegal remuneration,

designed by Defendant to "pull-through" higher-paying Medicare business

to Defendant.  Furthermore, waiving the patient's co-payment or

deductible portion is illegal under the laws of several states.  Lipid panels

and related tests are among the most frequently ordered – and expensive –

lab tests.

     b.     Defendant pays doctors inflated "packaging" fees for drawing blood

specimens and packaging them for shipping.  The fees paid by Defendant

1

far exceed the fair market value of the processing, and constitute illegal remuneration designed to induce the referral of Medicare business. Boston Heart also encourages physicians to split their laboratory tests between various colluding entities in order to maximize the amount of draw fees they will receive.  In late 2014 and 2015, Defendant slightly modified this fee payment program, and instead of paying doctors directly, began paying doctors' staff members for drawing blood specimens and packaging them for shipping.

c.    Some of the physicians that refer patients to Boston Heart are also shareholders of Boston Heart.  The shareholder physicians engage in strictly prohibited self-referrals without disclosing their financial stake in Boston Heart to their patients.  This is a violation of Federal prohibitions on self-referrals and anti-kickback laws.  Every bill to Medicare for tests performed on a self-referred patient is a False Claim.

2.    These practices constitute an illegal kickback scheme, no more legal than if Defendant simply handed doctors envelopes of cash in exchange for Medicare referrals.

3.    Additionally, Defendant systematically bills Medicare using improper Current Procedural Terminology ("CPT") codes that allow for greater reimbursement.  For example, Boston Heart bills Medicare for the individual components of its lipid panel test, rather than using the lipid panel CPT code for billing.  Boston Heart also added four additional tests to its pre-packaged lipid panel test beyond the industry standard, bloating a common panel with additional tests to inflate its bills to Medicare.  This technique, known as "code stacking," allows Boston Heart to charge Medicare over $100 per panel test, rather than the $18.97 allowed for the

2

lipid panel test. Every bill to Medicare for a lipid panel that uses the code stacking method of billing is a False Claim.

4.      Medicare is administered by the United States government, and provides health coverage to people 65 years of age and older. Medicare's costs are staggering and continue to grow rapidly. In 2007, Medicare expenditures accounted for 16% of all Federal spending – second only to Social Security and Defense. Knowing that the Federal Government lacks the ability to track the massive amount of Medicare money as it flows through the complex healthcare delivery system, unscrupulous companies see Government money as an easy source for padding their profits. Defendant has predicated its business model on the abuse of the Medicare program – a program designed to benefit senior citizens, not private companies.

5.      In engaging in these illegal practices Defendant is not only cheating the system, but also driving competitors out of the marketplace, thereby reducing the quantity and quality of treatment options for elders.

6.      This is a *qui tam* action for violation of the Federal False Claims Act (31 U.S.C. §§ 3150 *et seq.*), to recover treble damages, civil penalties and attorneys' fees and costs for Plaintiffs, and on behalf of the United States for fraudulent Medicare billings. Non-public information personally known to Relator Chris Riedel ("Riedel") serves as the basis of this action.

## II.   JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 31 U.S.C. sections 3730(b) and 3732(a), which confer jurisdiction on this Court for actions brought under the Federal False Claims Act, and authorize nationwide service of process. Venue is proper in this district

pursuant to 31 U.S.C. section 3732(a), as Defendant transacts business in the District of Columbia.

## III.   PARTIES

8.   The plaintiff in this action is the UNITED STATES OF AMERICA ("United States"), by and through Relator CHRIS RIEDEL.

9.   Relator CHRIS RIEDEL is an individual engaged in the commercial reference laboratory business.

10.   Defendant BOSTON HEART DIAGNOSTICS CORPORATION is a Delaware corporation with its principal place of business in Massachusetts.

## IV.   OVERVIEW OF THE SCHEME

11.   Boston Heart is a medical laboratory that specializes in advanced lipid testing. Advanced lipid testing helps identify coronary heart disease risk factors that standard cholesterol and other basic blood tests do not.  Advanced lipid tests tend to be more expensive than more basic medical laboratory tests, and consequently can result in higher profit margins for the laboratories that provide them.

12.   Because the purpose of advanced lipid testing is generally to detect, prevent, and manage coronary heart disease, the patient population that requires the testing is largely comprised of senior citizens covered by Medicare.  On information and belief, more than 30% of the tests conducted by Boston Heart are for patients covered by Medicare.

13.   Boston Heart is reimbursed by Medicare a total of over $600 for its popular Complete One lipid panel test, per patient.  This panel is often ordered as many as six times per year.  Boston Heart's profit margins on its Medicare business are extraordinary.  Consequently,

4

Defendant – desperate to capture and retain Medicare business – has pushed its marketing techniques into blatantly illegal territory.

14.     Specifically, in order to capture and retain Medicare business, Defendant has offered several forms of illegal remuneration to physician customers in order to induce referral of Medicare business.

15.     The first form of illegal remuneration is the waiver of private insurance co-payments.  A significant portion of a physician's non-Medicare patients will be covered by private insurance.  Most private insurance companies require that a patient ordering a laboratory test make a co-payment of approximately 20% of allowable charges to the laboratory.  The co-payments can be significant to patients, especially those being treated with statin therapy, who require regular medical treatment and lipid testing with attendant co-payments at least four times per year.  For example, the most common panel of tests ordered at Boston Heart is the Complete One panel, which costs $614.29.   The co-payment, if charged, would be approximately $122.  Accordingly, waiving the co-payment of patients is a significant benefit that a physician can provide to his or her patients.  Knowing this, Defendant promises physicians that it will waive the copayment, as long as the physicians send all of their lipid-related business – including Medicare business – to the Defendant's laboratory.  Boston Heart waives the remaining fee, writing off hundreds of dollars of charges for some patients.

16.     The second form of illegal remuneration is the waiver of private insurance deductible payments.  Most private insurance companies require that a patient ordering a laboratory test make a deductible payment to the laboratory until the patient has met a deductible amount each year.  The deductible payments can be significant to patients.  For example, in the case of the Complete One panel, the deductible payment, if charged, could be the entire $614.29,

depending upon the patient's insurance plan and medical care. Accordingly, the waiver of a deductible payment is a significant benefit that a physician can provide to his or her patients. Knowing this, Defendant promises physicians that it will waive deductibles, as long as the physicians send all of their lipid-related business – including Medicare business – to the Defendant's laboratory. Boston Heart waives the remaining fee, writing off hundreds of dollars of charges for some patients.

17.     Though Defendant loses money on uncollected co-payments and deductibles, it more than makes up the difference with the profits it earns on the Medicare referral business. This Medicare business, induced by the co-payment waiver for privately insured patients, is referred to in the industry as "pull-through" business. The majority of Medicare patients are receiving statin therapy, and therefore receive lipid testing four times per year. This amounts to annual Medicare payments of over $2,457 per patient.

18.     By waiving patient deductible and co-payments, the physician is no longer subject to any restraint on whether tests are medically necessary because they are free for patients. Indeed, by removing the patient's financial stake in the transaction, Defendants have neutralized one of the market's inherent checks on frivolous treatment. Waiving co-payments and deductibles to induce the referral of pull-through Medicare business constitutes illegal inducement, and is strictly prohibited by Federal anti-kickback laws and various state statutes.

19.     The third form of illegal remuneration provided by Defendant to induce the referral of Medicare business is the payment to physicians of inflated "packaging" fees. When a physician orders a test for a patient, the physician can either send the patient to the laboratory to have blood drawn, or the physician can have a nurse or medical assistant in the physician's office draw the blood, after which the specimen is packaged and sent to the laboratory in a shipping

6

package provided and paid for by the laboratory. Boston Heart does not have a wide network of blood draw centers, and most blood specimens are drawn by the physicians who order the tests.

20.     When a physician's office draws the specimen, standard industry practice allows for the laboratory to pay the physician a nominal fee for the small amount of time it takes to draw and package the specimen. Medicare provides a $3 payment to physicians for drawing a specimen.

21.     In this case, Boston Heart pays referring physicians draw and "packaging" fees that are well over the $3 Medicare amount, far exceeding standard industry practice and fair market value. More egregiously, Boston Heart also encourages physicians to break up their testing needs among multiple colluding laboratories in order to receive draw fees from multiple sources rather than have one lab perform all the tests. This facilitates multiple "packaging" fees per patient, rather than the industry standard of one fee per patient, regardless of the number of labs to which the test specimens are sent. The difference in the amount of time and effort that it takes to draw and package multiple specimens from the same patient, as opposed to a single specimen, is negligible; multiple specimens are drawn from the same venipuncture, and are centrifuged and packaged at the same time. Accordingly, a physician can draw two vials of blood, order tests from Boston Heart and another laboratory, ship them in two packages to Defendant and the other laboratory, and receive an inflated "packaging" fee from Defendant — an amount that far exceeds reasonable compensation — and another "packaging" fee from another laboratory. Moreover, Boston Heart actively encourages physicians to order additional tests – whether medically necessary or not – in order to increase the number of "packaging" fees physicians receive. Defendant promotes this practice by sponsoring seminars that discuss how

7

profitable splitting up tests between laboratories can be for physicians. These multiple "packaging" fees are pure artifice, thinly disguised kickbacks.

22.     In late 2014 and 2015, Defendant slightly modified this fee payment program, and instead of paying doctors directly, began paying doctors' staff members for drawing blood specimens and packaging them for shipping. Defendant pays doctors' staff as much as $25 per blood draw. This arrangement allows medical staff to essentially double their income. Moreover, Physicians are encouraged to order tests to obtain a portion of the medical staff's kickback (or to allow them to pay their staff less). This remuneration is illegal as it induces medical assistants and physicians to order tests from Defendant.

23.     Defendant also uses its physician shareholders to refer patients to receive laboratory tests at Boston Heart. This is self-referral, a particularly inappropriate form of kickback, and a violation of the Stark Law. Like the other kickbacks, self-referral monetarily rewards physician shareholders for each and every order they place with Defendant, undermining their ability to provide objective, effective, and efficient care. This practice, combined with the other illegal benefits Defendant provides to physicians, creates lucrative incentives for physicians to order unnecessary tests and to provide Boston Heart with all of the physicians' laboratory business.

24.     In addition to providing illegal kickbacks, Defendant manipulates the CPT codes it uses to bill Medicare by code stacking. Boston Heart has redefined the "lipid panel" to add four additional tests (sdLDL-C, Lp(a), Apo A-1 and Apo B). Thus, physicians ordering a common blood panel also order these four additional components, and cannot order the panel without receiving these additional tests. Moreover, Boston Heart bills Medicare the individual components of its lipid panel test, rather than using the lipid panel CPT code 80061 for billing.

The Medicare reimbursement for the lipid panel using CPT code 80061 is $18.71. The Medicare reimbursement for the same components of the lipid panel, CPT code 80061, totals $39.42 when billed separately. Boston Heart then tacks on X additional tests totaling $77.53. Accordingly, instead of ordering the standard lipid panel, which contains four test components, Boston Heart orders eight individual tests. This technique allows Boston Heart to charge Medicare over $100 per lipid panel, rather than the $18.97 allowed by Medicare. Each time it does so, Boston Heart violates the False Claims Act.

## V. DEFENDANT VIOLATED THE FALSE CLAIMS ACT BY PROVIDING KICKBACKS IN EXCHANGE FOR THE REFERRAL OF "PULL-THROUGH" MEDICARE AND MEDI-CAL BUSINESS

25. Defendant violated the False Claims Act by charging Medicare for lab tests that were referred to Defendant by providers because of kickbacks offered to those providers by Defendant. Defendant's practices are unlawful as kickback schemes, strictly prohibited by Medicare statutes. Specifically, 42 U.S.C. § 1320a-7b(b)(2)(A) prohibits "Illegal remunerations" for "Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) *directly or indirectly, overtly or covertly*, in cash or in kind to any person to induce such person to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program . . . ." 42 U.S.C. § 1320a-7b(b)(2)(A) (emphasis added).

26. Interpretations of this language by the Federal authorities provide useful guidance in applying these anti-kickback laws, and establish that Defendant has violated the anti-kickback laws of the United States through the conduct described herein. For example, the Federal Department of Health and Human Services, Office of the Inspector General ("OIG"), reaffirmed on May 9, 2008, that: "[W]hen a laboratory offers or gives an item or service for free **or less**

9

than fair market value to a referral source, an inference arises that the item or service is offered to induce the referral of business." OIG Advisory Opinion No. 08-06. An anti-kickback "violation arises if the discount whatever its size is **implicitly or explicitly tied** to referrals of" government-funded business. OIG Opinion Letter, April 26, 2000.

27.     In October 1994, the OIG issued a Special Fraud Alert, entitled "How Does the Anti-Kickback Statute Relate to Arrangement for the Provision of Clinical Lab Services?" As an example of a situation giving rise to an inference of an illegal kickback, the Special Fraud Alert cited laboratories that waive charges to providers for lab tests of managed care patients (such as the co-payments of patients here).

28.     Moreover, in June 2005, the OIG issued an Advisory Opinion concluding that payments by a laboratory to referring physicians of $6 per day for "collection of blood samples," likely constituted "prohibited remuneration under the anti-kickback statute." OIG Advisory Opinion No. 05-08, at pp. 1-2. Specifically, the OIG concluded that:

> **Where a laboratory pays a referring physician to perform blood draws, particularly where the amount paid is more than the laboratory receives in Medicare reimbursement, an inference arises that the compensation is paid as an inducement to the physician to refer patients to the laboratory . . . .**
>
> **. . . . Because the physicians would receive a portion of the Lab's reimbursement for blood tests resulting from the physicians' referrals, the physicians have a strong incentive to order more blood tests. As a result, there is a risk of overutilization and inappropriate higher costs to the Federal health care programs.**

*Id.* at p. 4.

29.     The "packaging" fees paid by Defendant to referring providers in this case are no different. As in the "collection" fees paid in the Advisory Opinion's scenario, the "packaging" fee and other "compensation provides an obvious financial benefit to the referring physician, and

it may be inferred that this benefit would be in exchange for referrals to the Lab." OIG Advisory Opinion No. 05-08, at p. 4. Currently, Medicare pays a $3.00 "draw fee," for collecting physicians. The "packaging" fees paid by Defendant are many multiples of this Medicare draw fee, and physicians are encouraged to use multiple laboratories in order to inflate the "packaging" fees. This alone gives rise to an inference of illegal remuneration. Moreover, as in the scenario considered by the OIG's Advisory Opinion, the "packaging" fees, waiving patient co-payments and deductibles, and other remuneration provided by Defendant has the effect of incentivizing physicians to order more tests, creating a "risk of overutilization and inappropriate higher costs to the Federal health care programs." *See id.* at p. 4.

30.     Defendant violated the anti-kickback laws described in these OIG opinions by waiving co-payments and deductibles and paying referring physicians and their staff inflated "packaging" and draw fees, and both implicitly and explicitly tying these kickbacks to the referral of Medicare business. Accordingly, Defendant violated the Federal anti-kickback provisions. Defendant presented to Medicare claims for reimbursement of laboratory tests the referral of which was induced, in whole or in part, directly or indirectly, overtly or covertly, by the provision of the kickbacks described above. Each of those claims constitutes a violation of the Federal False Claims Act.

31.     Defendant also violated the anti-kickback laws by using physicians with a financial stake in Boston Heart to refer their laboratory business to Boston Heart. Boston Heart relied on physicians that were also shareholders in Boston Heart to provide additional laboratory referrals. This self-referral is directly in violation of 42 USC section 1395nn, subsection (a)(1), which proscribes a physician from referring a patient to an entity "if [the] physician (or an immediate family member of such physician) has a financial relationship with [the] entity."

32.     Self-referrals also violate Federal anti-kickback statutes and the Federal False

Claims Act.   On September 23, 2010 the Center for Medicare & Medicaid Services ("CMS")

published the "CMS Voluntary Self-Referral Disclosure Protocol" pursuant to the Affordable

Care Act.   There, CMS stated that "conduct that raises liability risks under the physician self-

referral statute may also raise liability risks under … the federal anti-kickback statute."  CMS

Voluntary Self-Referral Disclosure Protocol at p. 2.  Each laboratory test Boston Heart billed to

Medicare and performed on a patient referred by a physician with a financial stake in Boston

Heart constitutes a violation of the Federal False Claims Act.

33.     At all times relevant hereto, Defendant knew that Federal law prohibited its

giving or receiving these kickbacks and self-referrals.  Defendant certified, both explicitly and

implicitly, that each claim it submitted to Medicare would fully comply with all statutes and

regulations, including the anti-kickback provisions and the self-referral provisions, and that as

Medicare providers, it would comply with all pertinent statutes and regulations, including the

anti-kickback provisions and self-referral provisions.

34.     Each claim for payment submitted by Boston Heart, from at least 2009 to the

present, to Medicare that was referred to Defendant by a provider who received any of the three

forms of remuneration described above from Defendant constitutes a false claim in violation of

the False Claims Act (31 U.S.C. § 3729 *et seq.*).  Over this time period, Defendant has submitted

thousands of such claims for payments, and collected millions of dollars from the Government as

a result of these illegal kickbacks.

*/ / /*

*/ / /*

*/ / /*

12

## VI.   DEFENDANT VIOLATED THE FALSE CLAIMS ACT BY USING CODE STACKING TO INFLATE THE AMOUNT BILLED TO MEDICARE FOR PANEL TESTS

35.    Boston Heart violated the False Claims Act by submitting claims for payment for laboratory panel tests that individually billed for each component of a panel series of tests. Medicare reimburses laboratories for tests on either an individual or panel basis.  For example, patients with a history of heart disease or who present with symptoms that indicate heart disease often receive a lipid panel, which includes a series of blood tests that measure triglycerides, lipoproteins, cholesterol, and other relevant markers.

36.    Medicare pays a lower rate for the lipid panel than the sum of each individual component, reflecting the economies of scale inherent in running multiple, simultaneous tests. Boston Heart, however, manipulates this process by packaging additional tests with its lipid panel and refusing to use the correct CPT code for the lipid panel of tests.  The industry standard lipid panel contains four components, and Medicare has designated a CPT code for the lipid panel.  Boston Heart tacks on four additional tests to its lipid panel, causing physicians to unwittingly order those additional tests every time they order a lipid test.

37.    Further, Boston Heart refuses to use the CPT code for the lipid panel, and bills separately for each individual test within the panel and the four additional tests, grossly inflating the total amount billed.  Medicare pays $18.97 for the lipid panel, but the sum of each individual test — the amount Boston Heart actually bills for — is $116.95.

38.    This process is known as "code stacking," and falsely represents that each of the individually billed testing components was actually performed individually, rather than as part of a panel of tests. Each claim for a test that was run as part of a lipid panel but billed as an

13

individual test using the code stacking method constitutes a violation of the Federal False Claims Acts.

39.     At all times relevant hereto, Defendant knew that Federal law prohibited code stacking and the manipulation of Medicare reimbursement.  Defendant certified, both explicitly and implicitly, that each claim it submitted to Medicare would fully comply with all statutes and regulations, and that as Medicare providers, it would comply with all pertinent statutes and regulations.

40.     Each claim for payment submitted by Boston Heart, from at least 2009 to the present, to Medicare that employed code stacking constitutes a false claim in violation of the False Claims Act (31 U.S.C. § 3729 *et seq.*).  Over this time period, Defendant has submitted thousands of such claims for payments, and millions of dollars from the Government as a result of these false claims.

## VII.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### ON BEHALF OF THE UNITED STATES
### FEDERAL FALSE CLAIMS ACT, PRESENTING FALSE CLAIMS
### 31 U.S.C. § 3729(A)(1)(A)

41.     Plaintiffs incorporate by reference and reallege all of the allegations contained in paragraphs 1 through 39 of this Complaint as though fully set forth herein.

42.     Defendant knowingly (as defined in 31 U.S.C. § 3729(b)(1)) presented or caused to be presented false claims for payment or approval to an officer or employee of the United States.

43.     Defendant knowingly presented false records and statements, including but not limited to bills, invoices, requests for reimbursement, and records of services, in order to obtain

14

payment or approval of charges by the Medicare program that were higher than it was permitted

to claim or charge by applicable law. Among other things, Defendant knowingly submitted false

claims for Medicare business that was obtained by means of, and as a result of, illegal kickbacks.

44.     Defendant knowingly made, used, and caused to be made and used false

certifications that its claims, and all documents and data upon which those claims were based,

were accurate, and were supplied in full compliance with all applicable statutes and regulations.

45.     The conduct of Defendant violated 31 U.S.C. § 3729(a)(1)(A) and was a

substantial factor in causing the United States to sustain damages in an amount according to

proof.

### SECOND CAUSE OF ACTION
### ON BEHALF OF THE UNITED STATES FEDERAL FALSE CLAIMS ACT, MAKING OR USING FALSE RECORDS OR STATEMENTS MATERIAL TO PAYMENT OR APPROVAL OF FALSE CLAIMS
### 31 U.S.C. § 3729(A)(1)(B)

46.     Plaintiffs incorporate by reference and reallege all of the allegations contained in

paragraphs 1 through 39 of this Complaint as though fully set forth herein.

47.     Defendant knowingly (as defined in 31 U.S.C. § 3729(b)(1)) made, used, or

caused to be made or used false records or statements material to false or fraudulent claims.

48.     Defendant knowingly made, used, and/or caused to be made and used false

records and statements, including but not limited to bills, invoices, requests for reimbursement,

and records of services, that were material to the payment or approval of charges by the

Medicare program that were higher than it was permitted to claim or charge by applicable law.

Among other things, Defendant made and used bills for Medicare business that was obtained by

means of, and as a result of, illegal kickbacks.

49.     Defendant knowingly made, used, and caused to be made and used false certifications that its claims, and all documents and data upon which those claims were based, were accurate, and were supplied in full compliance with all applicable statutes and regulations.

50.     The conduct of Defendant violated 31 U.S.C. § 3729(a)(1)(B) and was a substantial factor in causing the United States to sustain damages in an amount according to proof.

## THIRD CAUSE OF ACTION
### (IN THE ALTERNATIVE)
### ON BEHALF OF THE UNITED STATES FEDERAL FALSE CLAIMS ACT, RETENTION OF PROCEEDS TO WHICH NOT ENTITLED
### 31 U.S.C. § 3729(A)(1)(G)

51.     Plaintiffs incorporate by reference and reallege all of the allegations contained in paragraphs 1 through 39 of this Complaint as though fully set forth herein.

52.     In the alternative, Defendant knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government.

53.     As discussed above, Defendant received far more money from the Medicare programs than it was entitled to.  Defendant knew that it received more money than it was entitled to, and avoided its obligation to return the excess money to the Government.

54.     The conduct of Defendant violated 31 U.S.C. § 3729(a)(1)(G) and was a substantial factor in causing the United States to sustain damages in an amount according to proof.

/ / /

/ / /

16

## VIII.  <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs by and through Relator, pray judgment in its favor and against Defendant as follows:

1.     That judgment be entered in favor of plaintiff UNITED STATES OF AMERICA ex rel. CHRIS RIEDEL, and against Defendant BOSTON HEART, according to proof, as follows:

    a.   On the First Cause of Action (Presenting False Claims (31 U.S.C. § 3729(a)(1)(A))) damages as provided by 31 U.S.C. § 3729(a)(1), in the amount of:

        i.   Triple the amount of damages sustained by the Government;

        ii.   Civil penalties of Ten Thousand Dollars ($10,000.00) for each false claim;

        iii.   Recovery of costs;

        iv.   Pre- and post-judgment interest;

        v.   Such other and further relief as the Court deems just and proper;

    b.   On the Second Cause of Action (False Claims Act; Making or Using False Records or Statements Material to Payment or Approval of False Claims (31 U.S.C. § 3729(a)(1)(B))) damages as provided by 31 U.S.C. § 3729(a)(1) in the amount of:

        i.   Triple the amount of damages sustained by the Government;

        ii.   Civil penalties of Ten Thousand Dollars ($10,000.00) for each false claim;

        iii.   Recovery of costs;

       iv.     Pre- and post-judgment interest;

       v.     Such other and further relief as the Court deems just and proper;

d.     On the Third Cause of Action (False Claims Act, Retention of Proceeds to Which Not Entitled (31 U.S.C. § 3729(a)(1)(G))) damages as provided by 31 U.S.C. § 3729(a)(1) in the amount of:

       i.     Triple the amount of damages sustained by the Government;

       ii.     Civil penalties of Ten Thousand Dollars ($10,000.00) for each false claim;

       iii.     Recovery of costs;

       iv.     Pre- and post-judgment interest;

       v.     Such other and further relief as the Court deems just and proper.

2.     Further, Relator, on his own behalf, pursuant to 31 U.S.C. section 3730(d), requests that he receive such maximum amount as permitted by law, of the proceeds of this action or settlement of this action collected by the United States, plus an amount for reasonable expenses incurred, plus reasonable attorneys' fees and costs of this action.  Relator requests that his percentage be based upon the total value recovered, including any amounts received from individuals or entities not parties to this action.

Respectfully Submitted,

Dated: February 16, 2016     **COTCHETT, PITRE & McCARTHY, LLP**

By: _____

    NIALL P. McCARTHY (to be admitted *pro hac vice*)
    JUSTIN T. BERGER (to be admitted *pro hac vice*)
    ERIC J. BUESCHER (DC SBN 1008476)

Dated: February _____, 2016      **BERK LAW PLLC**


By: _____
　　　STEVEN N. BERK (DC SBN 432874)

*Attorneys for Relator*

## DEMAND FOR JURY TRIAL

Relator CHRIS RIEDEL hereby demands a jury trial on all issues so triable.

Respectfully Submitted,

Dated:  February ____, 2016          **COTCHETT, PITRE & McCARTHY, LLP**

By: _____
          NIALL P. McCARTHY (to be admitted *pro hac vice*)
          JUSTIN T. BERGER (to be admitted *pro hac vice*)
          ERIC J. BUESCHER (DC SBN 1008476)


Dated:  February ____, 2016          **BERK LAW PLLC**

By: _____
          STEVEN N. BERK (DC SBN 432874)

*Attorneys for Relator*